William M. HAAS, Plaintiff-Appellant,

v.

JEFFERSON NATIONAL BANK OF MIAMI BEACH, Defendant-Appellee,

and

Charles H. Glueck, New Party Defendant-Appellee.

No. 30231.

United States Court of Appeals, Fifth Circuit.

April 22, 1971.

William B. Webber, Robert W. Boughton, Roemisch & Wright, Cleveland, Ohio, for plaintiff-appellant.

Ely R. Katz, Michael H. Salmon, Miami Beach, Fla., for appellee, Jefferson National Bank of Miami Beach.

Thomas R. Spencer, Jr., Kenneth M. Myers, Myers, Kaplan, Porter, Levinson & Kenin, Miami, Fla., Jerome N. Curtis, Murray K. Lenson, Ulmer, Berne, Laronge, Glickman & Curtis, Cleveland, Ohio, for appellee, Charles H. Glueck.

Before GEWIN, AINSWORTH and ALDISERT,* Circuit Judges.

ALDISERT, Circuit Judge:

Following a pre-trial conference, the district court entered an order finding that Charles H. Glueck was an "indispensable party" under Fed.R.Civ.Pro. 19, and dismissing the action on the ground that Glueck's presence in the case "violates the requirements of complete diversity." We must determine whether the court's action was appropriate at a pre-trial stage, and, if so, whether it abused its discretion in dismissing the action instead of proceeding without Glueck.

Invoking jurisdiction on the basis of diversity of citizenship, 28 U.S.C. § 1332, Haas, a citizen of Ohio, sought a mandatory injunction from the district court directing the Jefferson National Bank, a citizen of Florida, to issue to him 169½ shares of its common stock. Alternatively, he asked for damages reflecting the stock's value. He alleged a 1963 agreement with Glueck, also an Ohio citizen, under which they were to jointly purchase 250 shares of the bank's stock; the certificates were to issue in the name of Glueck but Haas was to have a one-half ownership of the shares. He also pleaded a similar 1966 agreement with Glueck to purchase 34 additional shares. According to Haas, he paid Glueck amounts representing one-half ownership, the bank had knowledge of his ownership interest, and the certificates and subsequent dividends were issued to Glueck.

Haas contends, however, that in 1967 he requested Glueck to order the bank to issue certificates in Haas' name, reflecting his ownership of 169½ shares, and that pursuant to this request Glueck presented to the bank properly endorsed certificates for 250 shares with instructions to reissue 170 shares to Haas and the balance to Glueck.

In its answer, the Bank explained that it had refused to make the assignment because at the time of the transfer request Glueck was indebted to it under the terms of a promissory note which required that Glueck pledge, assign, and transfer to the bank property of any kind owned by Glueck and coming into the possession of the Bank. The Bank averred that Glueck withdrew the transfer request and instead pledged the stock certificates with a second bank as collateral for a loan there.

With these contentions forming the backdrop of the pre-trial conference, the parties stipulated to the questions of fact which remained to be litigated at trial:

(a) Did the Bank have knowledge of Haas' claimed ownership of the stock prior to Glueck's 1967 transfer request?

(b) Did Glueck withdraw the 1967 transfer request?

(c) What was the status of Glueck's obligation to the bank as represented by the promissory note?

* Of the Third Circuit, sitting by designation.

(d) Did the second bank have possession of the stock in controversy at the time Haas filed the action?

(e) Did Haas in fact own 169½ shares of the bank stock?

Following the pre-trial conference and the entry of these stipulations, the district court entered an order directing Haas to amend his complaint to join Glueck as a party. The court then denied his motion to dismiss Glueck as a party, and granted the Bank's motion to dismiss the amended complaint on the jurisdictional ground of incomplete diversity.[1]

■ We have no difficulty in concluding that the district court did not enter its joinder order prematurely. It was entirely appropriate to resolve Glueck's status on the basis of the pleadings and stipulations of the parties which posed the trial issues with completeness and precision. The vital factual issues having been joined, there was no reason to postpone the resolution of the indispensability problem until after the commencement of trial.[2]

■ Moreover, if the district court did not err in ordering the joinder of Glueck, it was obviously correct in finding a jurisdictional defect. It is clear beyond any doubt that the diversity statute requires complete diversity of citizenship. Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941); Treinies v. Sunshine Min. Co., 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85 (1939); Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L.Ed.2d 435 (1806). "The policy of the statute calls for its strict construction." Healy v. Ratta, 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1934). It is of course inmaterial that the nondiverse party has been required to be joined as an indispensable party. Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). "It is settled that failure of the district court to acquire jurisdiction over indispensable parties to an action deprives "the court of jurisdiction to proceed in the matter and render a judgment." Schuckman v. Rubenstein, 164 F.2d 952, 957 (6 Cir. 1947).[3]

In approaching the dispositive question whether Rule 19 required the joinder of Glueck, we begin with the formulation of Shields v. Barrow, 58 U.S. (17 How.) 130, 139, 15 L.Ed. 158 (1854). Indispensable parties were defined as

[p]ersons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience.

1. Service of process was not properly effectuated because the attempted service in Ohio was beyond the territorial limits of the district court in Florida. Fed.R. Civ.Pro. 4(f).

2. The Advisory Committee commented in part upon Rule 19 as follows:

A person may be added as a party at any stage of action on motion or on the court's initiative (see Rule 21); and a motion to dismiss, on the ground that a person has not been joined and justice requires that the action should not proceed in his absence, may be made as late as the trial on the merits (see Rule 12(h) (2), as amended; cf. Rule 12(b) (7), as amended). However, when the moving party is seeking dismissal in order to protect himself against a later suit by the absent person (subdivision (a) (2) (ii)), and is not seeking vicariously to protect the absent person against a prejudicial judgment (subdivision (a) (2) (i)), his undue delay in making the motion can properly be counted against him as a reason for denying the motion. A joinder question should be decided with reasonable promptness, but decision may properly be deferred if adequate information is not available at the time. Thus the relationship of an absent person to the action, and the practical effects of an adjudication upon him and others, may not be sufficiently revealed at the pleading stage; in such a case it would be appropriate to defer decision until the action was further advanced. Cf. Rule 12(d).

3. See generally Note, Indispensable Parties in the Federal Courts, 65 Harv.L.Rev. 1050 (1952); Note, Indispensable Parties Under the Federal Rules of Civil Procedure, 56 Yale L.J. 1088 (1947).

As Mr. Justice Harlan declared in Provident Tradesmens Bank & Trust Co. v. Patterson, *supra*, 390 U.S. 102, 124, 88 S.Ct. 733, 746, 19 L.Ed.2d 936, the generalizations of *Shields* "are still valid today, and they are consistent with the requirements of Rule 19. \* \* \* Indeed, the \* \* \* *Shields* definition states, in rather different fashion, the criteria for decision announced in Rule 19(b)." It is essential, however, to bear in mind that the broad statements in *Shields* "are not a substitute for the analysis required by that Rule." *Id.*

Fed.R.Civ.Pro. 19, as amended in 1966, provides:

(a) *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already

parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. \* \* \*

(b) *Determination by Court Whenever Joinder not Feasible.* If a person as described in subdivision (a) (1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.[4]

The Rule thus commands that we address ourselves to two broad questions: (1) Was Glueck a party "to be joined if

4. Rule 19, as amended, has not received uniform endorsement by commentators. See, e. g., Fink, Indispensable Parties and the Proposed Amendment to Federal Rule 19, 74 Yale L.J. 403 (1965). In arguing against the adoption of the new rule, the author concluded:

Undeniably the indispensable parties rule sometimes puts the federal courts to a cruel choice: whether to proceed without absent persons whose interests might be affected by any decree entered or whose presence is required for the entry of a complete, just, and viable decree, or to dismiss the action and thereby perhaps deny the present plaintiff any forum in which his action may be heard. This problem can best be attacked, not by seeking ways to proceed without interested persons, which inevitably has the effect of fragmenting law suits, but by searching for the means of bringing all interested persons before a single forum so that whole controversies may be expeditiously settled.

For this reason, the more desirable answers would seem to be an extension of service of process in the federal courts to bring in absent indispensable and conditionally necessary parties; a relaxation of venue requirements as to such parties, and a relaxation of complete diversity requirements in regard to such absent parties. These changes, which may be made readily by the Court and by Congress, would meet the real problem involving joinder requirements —the largely artificial barriers which today prevent complete and expeditious adjudications of entire controversies in the federal courts.

*Id.* at 448. In this connection, see Cound, Friedenthal, Miller, Civil Procedure 489 (1968):

Notice that a federal court can acquire jurisdiction over an absentee not within the state pursuant to any long arm statute, Rule 4(e), and that it can also serve persons brought in under Rule 19 if they are within 100 miles from the place where the action is commenced, whether or not the place of service is

feasible" under section (a)? If so, (2) was the court correct, under section (b), in dismissing the action or should it have proceeded without the additional party?

It is readily apparent that Glueck "falls within the category of persons who, under § (a), should be 'joined if feasible,'" Provident Tradesmens Bank & Trust Co. v. Patterson, *supra*, 390 U.S. at 108, 88 S.Ct. at 737, 19 L.Ed.2d 936, for his presence is critical to the disposition of the important issues in the litigation. His evidence will either support the complaint or bolster the defense: it will affirm or refute Haas' claim to half ownership of the stock; it will substantiate or undercut Haas' contention that the Bank had knowledge of his alleged ownership interest; it will corroborate or compromise the Bank's contention that Glueck rescinded the transfer order; and it will be crucial to the determination of Glueck's obligation to the Bank under the promissory note. The essence of Haas' action against the Bank is that it "unlawfully and recklessly seized, detained, [and] exercised improper dominion" over his shares in transferring and delivering them to the second bank as collateral for Glueck's loan. Thus, Glueck becomes more than a key witness whose testimony would be of inestimable value. Instead he emerges as an active participant in the alleged conversion of Haas' stock.

Applying the criterion of Rule 19(a) (2) (ii), we believe that Glueck's absence would expose the defendant Bank "to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest." If Haas prevailed in this litigation in the absence of Glueck and were adjudicated owner of half of the stock, Glueck, not being bound by *res adjudicata,* could theoretically succeed in later litigation

against the Bank in asserting ownership of the whole. In addition, a favorable resolution of Haas' claim against the Bank could, under (a) (2) (i), "as a practical matter impair or impede [the absent party's] ability to protect [his] interest" in all of the shares—an interest that is at least apparent since all of the stock was issued in Glueck's name.

Because Glueck cannot be made a party without destroying diversity, however, it remains to be decided whether, under Rule 19(b), his presence is so vital that "in equity and good conscience the action * * * should be dismissed, the absent person being thus regarded as indispensable." This decision is always a matter of judgment and must be exercised with sufficient knowledge of the facts in order to evaluate the exact role of the absentees. As the Supreme Court has said:

> The decision whether to dismiss (*i. e.,* the decision whether the person missing is "indispensable") must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests. Rule 19 does not prevent the assertion of compelling substantive interests; it merely commands the courts to examine each controversy to make certain that the interests really exist.

Provident Tradesmens Bank & Trust Co. v. Patterson, *supra*, 390 U.S. at 118, 119, 88 S.Ct. at 743, 19 L.Ed.2d 936. The spirit of the Rule is to depart from the tyranny of the old labels of "necessary" and "indispensable", and to solve each problem "in the context of particular litigation." *Id.* at 118, 88 S.Ct. at 742, 19 L.Ed.2d 936.[5]

We turn now to the specific factors enumerated in Rule 19(b), as applied to the facts before us. In our view the first

---

within the state in which the action is pending, Rule 4(f). Should the remaining territorial barriers be broken down? *See also* American Law Institute Study of the Division of Jurisdiction between State and Federal Courts, §§ 2341 et seq (official draft 1968); Carrington, Civil Procedure, 896–899 (1969).

5. See Wright, Law of Federal Courts, § 70, at 296–302 (2d ed. 1970). Prior to the amendment of the Rule in 1966, Professor James observed:

> Moreover, in many cases a factual inquiry is needed before a realistic appraisal can be made of the weight properly to be attached to one or more of

factor tracks the considerations of 19(a) (2)(ii) discussed above: "to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties." And based on the reasoning previously set forth, we believe this factor supplies weighty reason for a finding of indispensability.[6]

The second factor directs the court to consider the extent to which the shaping of relief might avoid or lessen the prejudice to existing or absent parties.[7] Because the title to the stock certificates, although not the immediate issue in this litigation, assumes such commanding importance, it is difficult to conceptualize a form of relief or protective provisions which would not require as a preliminary matter the determination of the question of title with all the resulting potential for prejudice.

In analyzing the third factor, "whether a judgment rendered in the person's absence will be adequate," Mr. Justice Harlan cautioned:

[T]here remains the interest of the courts and the public in complete, con-

sistent, and efficient settlement of controversies. We read the Rule's third criterion, whether the judgment issued in the absence of the nonjoined person will be "adequate," to refer to this public stake in settling disputes by wholes, whenever possible, for clearly the plaintiff, who himself chose both the forum and the parties defendant, will not be heard to complain about the sufficiency of the relief obtainable against them. * * *

Provident Tradesmens Bank & Trust Co. v. Patterson, *supra,* 390 U.S. at 111, 88 S.Ct. at 739, 19 L.Ed.2d 936. It seems evident to us that the absence of Glueck in this litigation would, of necessity, result in less than a complete settlement of this controversy. For reasons already discussed, there is no semblance of a guarantee that a judgment on Haas' terms would settle the whole dispute generated by the facts here.

Finally Rule 19(b) requires us to consider whether the plaintiff will have an avenue for relief if the district court's dismissal for nonjoinder is affirmed.[8]

the factors. Because of all this, the problem does not readily lend itself to solution by fixed and rigid rules. What is called for, rather, is flexibility and a case-by-case appraisal of the relevant factors.

James, Civil Procedure § 9.20, at 425 (1965).

6. [T]he defendant may properly wish to avoid multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another. * * * [T]here is [also] the interest of the outsider * * *. Of course, since the outsider is not before the court, he cannot be bound by the judgment rendered. This means, however, only that a judgment is not *res judicata* as to, or legally enforceable against, a nonparty * * *. Instead, as Rule 19(a) expresses it, the court must consider the extent to which the judgment may "as a practical matter *impair or impede his ability to protect*" his interest in the subject matter. * * *

Provident Tradesmens Bank & Trust Co. v. Patterson, *supra,* 390 U.S. at 110, 88 S.Ct. at 738, 19 L.Ed.2d 936.

7. Rule 19(b) also directs a district court to consider the possibility of shaping relief to accommodate these four interests. Commentators had argued that greater attention should be paid to this potential solution to a joinder stymie, and the Rule now makes it explicit that a court should consider modification of a judgment as an alternative to dismissal.

*Id.* at 111–112, 88 S.Ct. at 739, 19 L.Ed. 2d 936.

8. [T]he plaintiff has an interest in having a forum. Before the trial, the strength of this interest obviously depends upon whether a satisfactory alternative forum exists. * * *

*Id.* at 109, 88 S.Ct. at 738, 19 L.Ed.2d 936. See James, Civil Procedure, § 9.20 at 432 (1965):

[T]he availability of the state court is a factor properly to be considered by the federal court in weighing the relative interests which will be affected by a ruling of indispensability. Even if the plaintiff's preference for the federal forum deserves the court's enthusiastic protection, the disappointment of that choice is not so great a hardship on the plaintiff as the foreclosing of all courts to him.

Clearly, the state courts of Ohio afford plaintiff Haas an opportunity to adjudicate his rights against Glueck.[9] They provide a ready forum to settle the question of title to the stock. Moreover, assuming the disposition of the preliminary question of title in the Ohio courts, it is not difficult to conceptualize circumstances permitting the possibility of a second action against the Bank in which the problem of nonjoinder will not be so acute.

Accordingly, applying Rule 19 (b)'s "equity and good conscience test", we hold that the district court did not abuse its discretion in concluding that Glueck was an indispensable party and in dismissing this action.

Affirmed.

Lumbard, Chief Judge, concurred in part and dissented in part and filed an opinion.

---

9. In response to the court's inquiry at oral argument, Haas' counsel reported that a state action between Haas and Glueck is now pending.