**FLORIDA INSURANCE GUARANTY ASSOCIATION, INC., Plaintiff,**

v.

**CAREY CANADA, INC., a foreign corporation organized in Canada and Carey Canadian Mining, Ltd., a foreign corporation organized in Canada, Defendants.**

**No. 88–0551–CIV.**

United States District Court,
S.D. Florida.

Nov. 30, 1988.

Walton, Lantaff, Schroeder & Carson by Richard P. Cole, Miami, Fla., for plaintiff.

Shackelford, Farrior, Stallings & Evans by Charles P. Schropp, Tampa, Fla., for defendants.

ORDER OF DISMISSAL

HOEVELER, District Judge.

THIS CAUSE came before the court for a hearing on defendants' motion to dismiss the action for failure to join Jim Walter

Corporation, ("JW") and the Celotex Corporation ("Celotex"), as indispensible parties under rule 19, Fed.R.Civ.P., and on plaintiff's motion to disqualify opposing counsel. The court has heard arguments of counsel, has reviewed the record, and for the following reasons and being otherwise duly advised in the premises, has determined that this action must be dismissed.

*Nature of the case*

This diversity action for declaratory relief was brought by Florida Insurance Guaranty Association ("FIGA"), a Florida corporation organized for the purpose of assuming the obligations of insolvent insurance companies, against Carey Canada, Inc. ("CC") and Carey Mining, Ltd. ("CM"), the coinsureds of four insolvent insurance carriers, for a determination of FIGA's obligations as successor in interest to the insolvent carriers. FIGA requests, *inter alia,* a general declaration regarding policy exclusions, defenses and definitions, including a definition of the triggering event; that the policy exclusions apply to asbestos products; and that FIGA is not responsible for the defense or liability associated with asbestos related claims. FIGA is also seeking a declaration that it is not responsible for any claims or indemnity payments until the level of claims payments is reached where FIGA would have been responsible had CC not participated in the Wellington Agreement and Asbestos Claims Facility.[1]

*Factual Background*

Carey Canada and Carey Mining, the defendants in this case, are wholly-owned Canadian subsidiaries of Celotex Corporation ("Celotex"), which is a wholly-owned subsidiary of the Jim Walter Corporation ("JW"). Both Celotex and JW are Florida corporations. Carey Canada manufactured asbestos fibers; Carey Mining mined the fibers in Canada. Jim Walter Corporation and its subsidiaries were insured by Transit Casualty Company under an excess umbrella liability policy from Oct. 1, 1980–Oct. 1, 1985. Midland Insurance Co. insured JW

and its subsidiaries under an excess umbrella liability insurance policy from Oct. 1, 1981–Oct. 1, 1985. Integrity Insurance Co. insured JW and its subsidiaries under an excess umbrella liability insurance policy from Oct. 1, 1982–Oct. 1, 1985. Mission National Insurance Co. insured JW and its subsidiaries under an excess umbrella liability policy from Oct. 1, 1984–Oct. 1, 1985. All four insurers are insolvent and are being liquidated.

Pursuant to Fla.Stat. section 631.091, FIGA is the successor to the rights and obligations of the insolvent insurance companies under the policies they issued. Ancillary receiverships have been established in Florida by court order for Integrity, Mission and Midland. There are currently about 60,000 pending personal injury claims relating to asbestos exposure. The total face value of the policies at issue is approximately $95 million.

FIGA has filed three suits, two in state court and one here, seeking a declaration of rights and obligations concerning the same policy provisions from the same policies, and seeking the same relief in each case. The first suit FIGA brought against Celotex in Broward County, Florida; the second FIGA brought against JW in Dade County, Florida; the third FIGA brought against Carey Canada and Carey Mining in this court. JW and Celotex have also sued FIGA in Hillsborough County, Florida on behalf of all insureds, seeking a similar declaration of rights under the same policies.

*Discussion*

1. Defendants' motion to dismiss for failure to join indispensable parties

■ Rule 19 states a two-part test for determining whether a party is indispensable: First, the court must ascertain whether, under the standards of Rule 19(a), the person or entity in question is one who should be joined if feasible; second, the court must inquire whether, applying the factors enumerated in Rule 19(b), the litiga-

---

**1.** In June, 1985, a group of asbestos producers, manufacturers, and insurers formed the Wellington Agreement and Asbestos Claims Facility in order to facilitate the administration, de-

fense, payment and disposition of asbestos-related claims. *Gardner v. Raymark Industries, Inc.,* No. 84–3131, slip op. at 2 (E.D.Pa. Oct. 15, 1986) [1986 WL 11707].

tion may continue. *Challenge Homes, Inc. v. Greater Naples Care Center, Inc.,* 669 F.2d 667 (11th Cir.1982). In making this decision, pragmatic concerns, especially the effect on the parties and the litigation, control. *Id.*

The first part of rule 19(a) focuses on the absent parties' ability to protect their interests in future actions, and on the risk of the parties before the court suffering multiple or inconsistent obligations. Rule 19(a)(2)(i), Fed.R.Civ.P.[2] In this case, FIGA cannot be granted complete relief by this court because it seeks a declaration of the rights and obligations under contracts of insurance in which the named insureds were JW and its subsidiaries. Any relief afforded by this court would be incomplete, since coinsureds are not named parties and probably are not bound by a decision of this court. A coinsured not named as a party to this suit might well have the right to make claims and present defenses inconsistent with the holdings of this court and thus, complete adjudication of the issues facing all parties may not be possible here. There is, therefore, the distinct likelihood of subjecting the parties to this lawsuit to multiple or inconsistent obligations.

Moreover, if, as both parties contend, the issues are generally the same, collateral estoppel would preclude relitigation of the same issues. Under the doctrine of collateral estoppel, determination of issues necessary to the outcome of a prior suit prevents relitigation of those issues in a second suit, even on a different cause of action and between different parties. *Parklane Hosiery v. Shore,* 439 U.S. 322, 326 & n. 5, 99 S.Ct. 645, 649 & n. 5, 58 L.Ed.2d 552 (1979). Because the action involves identical policies of which JW, Celotex, CC and Carey Mining are all coinsureds, a declaration as to the rights and obligations of one coinsured under the policy might act to collaterally estop other coinsureds.

The second part of rule 19(a) focuses on possible prejudice either to absent parties or present litigants.[3] *Challenge Homes,* 669 F.2d at 670. The identical interests of co-insureds require that an absent co-insured be joined to avoid, as indicated, the possibility of double or inconsistent judgments. *See, Moll v. U.S. Life Title Ins. Co.,* 654 F.Supp. 1012, 1015 (S.D.N.Y.1987) (an absent coinsured must be joined in order to prevent inconsistent judgments). CC, Carey Mining, JW and Celotex are all co-insureds under the applicable policies.

JW and Celotex unquestionably have an interest in this litigation. FIGA asserts, however, that JW's interest stems from its ownership of Celotex rather than from any direct interest in Carey Canada and that therefore joinder is not mandated under rule 19(b). This argument overlooks the declaratory context of this action, however. FIGA is seeking a declaration as to its rights and obligations under policies in which the defendants and JW and Celotex are all insured. Any declaration as to the policies by this court might well be properly pled to invoke collateral estoppel in future actions on the policies involving any of the coinsureds. In the context of this case, the interests of the coinsured parents and subsidiaries are identical. Where a parent and its subsdidiaries have identical interests, joinder of the parent as an indispensable party is warranted. *Bonar v. Schottland,* 631 F.Supp. 990, 998 (E.D.Pa.1986). Thus, in the context of this declaratory judgment action, the joinder of the corporate parents, JW and Celotex, with the subsidiaries, CC and Carey Mining, is warranted.

---

**2.** Rule 19(a) provides in pertinent part that
A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the claimed interest.
Rule 19(a), Fed.R.Civ.P.

**3.** *See supra* note 2.

■ To complete the analysis of rule 19(b),[4] the court must determine "whether in equity and good conscience the action should proceed among the parties already before it, or should be dismissed." Fed.R. Civ.P. 19, advisory committee's note. This consideration is based on four over-lapping and non-exclusive factors. *Id.*

First, the court should consider the effect of a judgment on the absentee. *Id.* Where there is a possibility of prejudicial precedent, courts have found prejudice under 19(b). *Bloch v. Sun Oil Corp.*, 335 F.Supp. 190 (W.D.Okla.1971). As noted above, litigation of this declaratory judgment action could have collateral estoppel effects on the absent parties, and, very likely, on the three other cases pending. Thus, this factor mitigates in favor of dismissal.

The second factor calls attention to the ways in which prejudice to the absent person may be lessened. Fed.R.Civ.P. 19, advisory committee's note. Shaping the relief to the particular circumstances is a familiar expedient. Here, a stay in the proceedings pending the outcome in the various state courts would protect both FIGA and the co-insureds from the possibility of inconsistent judgments.

The third factor is whether an adequate judgment can be rendered in the person's absence. Rule 19, Fed.R.Civ.P. Judicial economy and the desire to settle disputes in a single forum wherever possible are considerations under this factor. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111, 88 S.Ct. 733, 738–739, 19 L.Ed.2d 936 (1968). Because a judgment rendered against these defendants probably would not be fully dispositive of the issues involving the absent parties, the result here would not be an "adequate" disposition.

The fourth factor under Rule 19 is whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder of the absent person. This factor examines the practical effects of a dismissal, particularly the availability of another forum. Rule 19, Fed.R.Civ.P. advisory committee's note. In the instant case, this factor weighs heavily in favor of dismissal. The plaintiff has filed two other suits in state courts for litigation of the same issues. Defendants are parties plaintiff in the Hillsborough County action. Thus, there is another available forum for adjudication of these issues. Moreover, the issues the parties seek to litigate are issues of state law, making a state forum even more appropriate. FIGA concedes that it can pursue an action in state court. It merely argues that this suit should not be dismissed solely because of the availability of an alternate forum.

*Conclusion*

This suit should be dismissed not *solely* because of the availability of an alternate forum, but because under rule 19, JW and Celotex are necessary parties who should be joined if joinder is proper here. Because these parties cannot be joined without destroying the court's subject matter jurisdiction, the court must determine whether, in equity and good conscience, the case must be dismissed. On balance, the four factors of rule 19(b) weigh heavily in favor of dismissal. Therefore, this action will be dismissed for failure to join an indispensible party under rule 19, Fed.R.Civ.P.

In light of the necessity of dismissal for failure to join an indispensable party, the issue of attorney disqualification is moot.

Based on the foregoing, and the Court having considered the record in this cause

---

4. Rule 19(b) provides that:
   If a person as described in subdivision (a)(1)–(2) cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or to those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.
   Rule 19(b), Fed.R.Civ.P.

and being otherwise duly advised in the premises, it is

ORDERED AND ADJUDGED that

1. Defendants' motion to dismiss for failure to join an indispensible party is GRANTED. This cause is hereby DISMISSED.

2. Plaintiff's motion to disqualify opposing counsel is DENIED as MOOT.

3. All other pending motions are DENIED as MOOT.

DONE AND ORDERED.