In re FINANCIAL FEDERATED TITLE & TRUST, INC. a/k/a Asset Security Corp. a/k/a Viatical Asset Recovery Corp., a/k/a Quad–B–Ltd., a/k/a American Benefits Services, Inc., Debtor.

John W. Kozyak, Trustee, Plaintiff,

v.

Asset Base Resources, International, Ltd., and Thomas D. Sclafani, Individually, Defendants.

Bankruptcy No. 99–26616–BKC–RBR. Adversary No. 00–2270–BKC–RBR–A.

United States Bankruptcy Court, S.D. Florida, Broward Division.

Sept. 13, 2000.

Arthur Halsey Rice, Rice & Robinson, P.A., Miami, FL, for trustee.

Steve Mishan, Miami, FL, for defendants.

## MEMORANDUM ORDER DENYING DEFENDANT THOMAS D. SCLAFANI'S MOTION TO DISMISS ADVERSARY COMPLAINT

RAYMOND B. RAY, Bankruptcy Judge.

This matter came before the Court for hearing on August 8, 2000 upon the *Motion to Dismiss Adversary Complaint* filed by Defendant Thomas D. Sclafani. The Court, having reviewed the *Motion* and court file, having considered the arguments of counsel, and being otherwise duly advised in the premises, finds as follows.

### I. INTRODUCTION

On or about June 15, 2000, Plaintiff John W. Kozyak, Trustee for Financial Federat-ed Title and Trust, Inc. ("FinFed"), the Debtor in the main bankruptcy case from which the instant Adversary Proceeding arises, filed his *Complaint to Avoid Fraudulent Transfers and to Impose Transferee Liability* (the *"Complaint"*) against Defendants Asset Base Resources International, Ltd. ("ABRI") and Thomas D. Sclafani, individually ("Sclafani"), seeking to recover alleged fraudulent transfers of over $5 million to ABRI and over $1 million to Sclafani. Sclafani has moved to dismiss the *Complaint* because of the Trustee's failure to join an entity known as Transcontinental Management Services, Ltd. ("TMS") which, as will be explained in further detail below, Sclafani claims is an indispensable party under Rule 19 of the *Federal Rules of Civil Procedure.*[1] For the reasons set forth below, the Court concludes that TMS is not an indispensable party within the meaning of Rule 19 and, accordingly, Sclafani's *Motion to Dismiss* will be DENIED.

### II. BACKGROUND FACTS

Because this matter has come before the Court on a *Motion to Dismiss,* all of the allegations contained within the *Complaint* are taken as true. As stated previously, this proceeding involves the avoidance and recovery of certain alleged transfers to the Defendants from FinFed.

According to the *Complaint,* on March 5, 1999, FinFed began a series of transfers totaling over $5 million to an entity known as CSI Ag., Ltd. ("CSI"). CSI is a corporation controlled by an individual named Gary Pierce, and its officers are Pierce and an individual named Anthony Thompson ("Thompson"). These initial transfers to CSI have been avoided by the Trustee in a prior action styled *Kozyak v. Gary Pierce*

---

1. In his *Motion to Dismiss,* Sclafani also sought to dismiss Count II of the *Complaint,* which alleges that the transfers to ABRI were fraudulent under 11 U.S.C. § 548(A)(1)(B) but mistakenly seeks judgment against Sclafani for the value of these transfers in the "Wherefore" clause. On August 8, 2000, this Court entered an Order granting the Trustee's *Motion to Amend by Interlineation,* which was filed on August 1, 2000, in order to correct this scrivener's error. Accordingly, the *Motion to Dismiss* as to Count II for failure to state a claim against Sclafani is moot and need not be addressed in this *Order.*

*and CSI Ag., Ltd.*, Adversary No. 99–2558–BKC–RBR–A, by *Memorandum Decision Granting Partial Final Judgment by Default* dated February 18, 2000.

The *Complaint* further alleges that or about May 10, 1999, CSI transferred $4,890,000.00 to Defendant ABRI. ABRI is allegedly a limited partnership, formed under the laws of the Bahamas, whose officers are Thompson and Frederick Brandau, a principal of FinFed.

In late July of 1999, CSI then allegedly transferred $100,000.00 to Defendant Sclafani. Two days later, ABRI allegedly transferred $1 million to Sclafani. The Trustee avers that ABRI accomplished this transfer by first transferring the funds to a Bahamian bank account held by TMS, whose officers are Thompson, his daughter, and a woman named Anette Langley. Within days, TMS conveyed these funds to Sclafani. The Trustee does not allege that TMS is the recipient of any fraudulent transfers from FinFed. Instead, he alleges that TMS was a mere conduit for the transfer to Sclafani.

The Trustee's *Complaint* seeks to avoid and recover the transfers from CSI to Sclafani and ABRI under 11 U.S.C. § 548 and § 550(a)(1) and Fla.Stat. § 726.105, asserting that ABRI and Sclafani were the initial transferees and CSI was a mere conduit for the funds transferred. In the alternative, the *Complaint* contains a count for mediate or subsequent transferee liability against both ABRI and Sclafani under 11 U.S.C. § 550(a)(2) because all of the initial transfers from FinFed to CSI have been avoided.

The Trustee's *Complaint* also seeks to recover the value of the alleged transfer of $1 million from ABRI directly to Sclafani via TMS, premised on the fact that Sclafani is a mediate or subsequent transferee of the voidable transfer to ABRI from Fin-Fed. In the alternative, the Trustee alleges that this transfer can be avoided as a direct transfer from FinFed, using CSI, ABRI, and TMS as conduits. Neither theory alleges that TMS is a transferee of any

funds, and the *Complaint* seeks no relief against TMS. Sclafani claims that TMS is an indispensable party who cannot be joined and, accordingly, the *Complaint* should be dismissed.

## III. ANALYSIS

### TMS is not an Indispensable Party to this Action

■ Deciding Sclafani's *Motion to Dismiss* for failure to join an indispensable party requires a two-step analysis for determining whether a party is indispensable, set forth in Rule 19 of the *Federal Rules of Civil Procedure*. First, the Court must ascertain under the standards of Rule 19(a) whether TMS is a "necessary party," or one who should be joined if feasible. *Challenge Homes, Inc. v. Greater Naples Care Center, Inc.*, 669 F.2d 667, 669 (11th Cir.1982). If TMS is found to be a necessary party, the Court must then proceed to the second step in the analysis, contained in Rule 19(b), which requires the Court to consider various factors and determine whether the litigation may continue. *Id.*

### A. TMS is Not "Necessary" to this Action.

■ According to Rule 19(a), Federal Rules of Civil Procedure:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence, complete relief cannot be accorded among those already parties; or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

This Court finds that TMS does not meet either test and, therefore, is not "necessary" as set forth in Rule 19(a).

### 1. TMS is Not Necessary to Accord Full Relief.

The absence or presence of TMS in this lawsuit has no bearing on the Court's ability to accord complete relief among those already parties. The Defendants, including Sclafani, are not requesting relief in this case, so to address this test the Court need only look at whether, in the absence of TMS, the Court can afford the Trustee the relief he seeks. Clearly, it can. The Defendants can be found liable as the direct, mediate, or immediate transferee of a fraudulent transfer, and they can be ordered to turn over the estate property and/or account for same. While it is true that the circumstances surrounding the transfers allege events involving FinFed, CSI, ABRI, and TMS, TMS does not need to be a party in the lawsuit to establish the relationship among these entities or the facts involved in the transfers. Facts concerning TMS's limited involvement as a conduit for the funds transferred can easily be substantiated by calling TMS as a witness or by using documentary evidence.

### 2. TMS Claims No Interest in this Action.

■ TMS has not claimed any interest in the Trustee's action against the Defendants for recovery of fraudulent transfers made for the benefit of the Defendants. The Trustee is not seeking affirmative relief against TMS, or alleging that TMS was the recipient of any fraudulent transfers. In fact, according to the allegations of the *Complaint,* TMS is no longer in possession of any property of the estate and was only in possession of the funds the Trustee seeks to recover from the Defendants for a short period, as a mere conduit. A determination that TMS is a conduit does not constitute a binding determination as to the rights, interests, or liabilities of TMS or TMS's participation in the acts alleged in the *Complaint.* To prevail on his allegations that TMS is a mere conduit

does not require The Trustee to show that TMS had any knowledge of the fraudulent nature of the transfers or that it was an alter-ego or agent of the Defendants. Instead, he must show only that TMS did not exercise sufficient dominion and control over the funds transferred to be considered a transferee. *Nordberg v. Societe Generale (In re Chase & Sanborn Corp.),* 848 F.2d 1196 (11th Cir.1988). *See, e.g., Metsch v. First Alabama Bank of Mobile (In re Colombian Coffee Co.),* 75 B.R. 177, 179 (S.D.Fla.1987) (finding that bank was mere conduit where bank had no discretion with respect to deposited funds; bank acquired no beneficial interest in the deposited funds; bank exhibited no bad faith; and bank was obligated to follow the depositor's instructions); *Salomon v. Nedlloyd, Inc. (In re Black & Geddes, Inc.),* 59 B.R. 873, 875 (Bankr.S.D.N.Y.1986) (finding that steamship agency was mere conduit where it simply collected payment from the debtor and applied the money to pay the freight to the common carrier); *Gropper v. Unitrac, S.A. (In re Fabric Buys of Jericho, Inc.),* 33 B.R. 334, 337 (Bankr. S.D.N.Y.1983) (holding that law firm acted as mere conduit of funds placed into firm's escrow account).

Finally, neither the Defendants nor TMS will be exposed to double or inconsistent liabilities if TMS is not joined. Section 550(d) of the Code provides that "the trustee is entitled to only a single satisfaction" of his claim. Should the Trustee prevail and recover the money and property sought from the Defendants in this action, it would be unnecessary for the Trustee to then turn and seek recovery from TMS. Similarly, the Trustee's recovery would have no effect on any subsequent claim TMS might have against the Defendants in the future. Moreover, 11 U.S.C. § 550 contains an express provision that protects against the Trustee making multiple recoveries. *See,* 11 U.S.C. § 550(d).

The case cited by Sclafani in support of his *Motion to Dismiss, Johnson & John-*

*son v. Coopervision, Inc.*, 720 F.Supp. 1116 (D.Del.1989), is inapposite. In that case, the plaintiff failed to join one of its subsidiaries, where the contract upon which the suit was based had been transferred to this subsidiary. *Id.* The court found that the subsidiary had an interest in the outcome of the litigation because it would be bound by any decision made as to the contract, and that it needed to be joined to protect this interest. *Id.* at 1123. As discussed above, TMS has no interest in the instant lawsuit and will not be affected by any judgment in favor of either party.

The *Johnson* court also held that the subsidiary was a necessary party because, were the plaintiff to recover from the defendant, the subsidiary could then sue the defendant seeking to recover under the same contract. *Id.* In the instant case, while the Court is unaware of the nature of any claims TMS may have against Sclafani unrelated to facts and circumstances surrounding the instant lawsuit, this Court can find no basis for TMS to sue Sclafani for damages *arising out of the same claim.* TMS has no standing to sue to recover a fraudulent transfer, and any damage award to the Trustee would come from Sclafani directly, so TMS could have no basis for an indemnification suit against Sclafani. Accordingly, Sclafani could not be subject to double or inconsistent liabilities in the absence of TMS.

### B. TMS is Not an Indispensable Party to This Action.

 Assuming arguendo TMS is a *necessary* party under the test set forth in Rule 19(a), TMS is not an *indispensable* party under Rule 19(b), and dismissal is neither automatic nor appropriate in this instance. Once a party is found to be "necessary" pursuant to Rule 19(a), the Court must then "determine how prejudicial a judgment would be to the nonjoined and joined parties, whether this prejudice could be lessened by the relief the court shapes, whether any judgment without joinder could be adequate, and, finally,

whether the plaintiff would be left with any remedy should the court dismiss for nonjoinder." *Wymbs v. Republican State Executive Comm. of Fla.*, 719 F.2d 1072 (11th Cir.1983) (citing *Challenge Homes, Inc.*, 669 F.2d at 669).

It has been suggested that while joinder of TMS would not divest this Court of subject matter jurisdiction, it may not be feasible to join TMS for practical reasons in that it is a foreign corporation over which this Court may not have personal jurisdiction. However, even if this were to prove true, dismissal is not warranted in the instant case. Considering the factors set forth above, the Court finds that a judgment rendered in the absence of TMS will not prejudice TMS in any way. As already discussed, the Trustee is not seeking to avoid any transfers to TMS and has not alleged that TMS is in possession of any funds fraudulently conveyed to it by the Debtor. Also, the Trustee is limited, under 11 U.S.C. § 550(d), to only a single satisfaction of his claim. Accordingly, a judgment rendered in favor of the Trustee in TMS's absence will have no effect on TMS other than the beneficial effect of preventing the Trustee from being able to seek further recovery from TMS. Similarly, should judgment be rendered in favor of the Defendants, it is difficult to imagine this having any effect, prejudicial or otherwise, on TMS.

Nor will proceeding with this action in the absence of TMS prejudice Sclafani. As support for his claim of prejudice, Sclafani offers the circular argument that a judgment rendered in TMS's absence would be "highly prejudicial" *because* TMS is an indispensable party. However, the term "indispensable party" is merely a conclusion arrived at after completing the analysis in Rule 19. *Challenge Homes, Inc.*, 669 F.2d at 669, n. 3.

Sclafani's unsupported claim of prejudice merely as a result of TMS's alleged indispensable status is unsupported and without merit. The Trustee is alleging that Sclafani was a direct transferee of the

funds in question, and the presence or absence of TMS as a named party in this action does not affect this allegation against Sclafani. If Sclafani were to need information from TMS to refute this allegation, as discussed above, TMS can be called as a third party witness.

As for the third and fourth Rule 19(b) factors, a judgment rendered in the absence of TMS will certainly be adequate for the Trustee. Because the Trustee seeks no relief from TMS, recovery from Sclafani and/or ABRI will address all of his claims. Dismissal as to Sclafani, however, would leave the Trustee with no adequate remedy against him. The Complaint alleges that Sclafani received a total of $1,100,000.00, and that $100,000.00 of those funds did not come from ABRI, but were routed from FinFed to CSI. Proceeding against ABRI alone would leave the Trustee with no means to recover these funds transferred to Sclafani directly.

## IV. CONCLUSION

TMS does not meet the standard for determining whether a party is indispensable under the test set forth in Rule 19 of the Federal Rules of Civil Procedure. Accordingly, for the reasons set forth above, it is

**ORDERED AND ADJUDGED** as follows:

1. That *Defendant Sclafani's Motion to Dismiss Adversary Complaint* is hereby **DENIED;** and

2. That the Defendant shall file an *Answer* on or before October 6, 2000.